**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 24-200-DLB-CJS**

**WADE SENDELBACH**                                                                      **PLAINTIFF**

**v.**                          **MEMORANDUM OPINION AND ORDER**

**CAMPBELL COUNTY FISCAL COURT, et al.**                          **DEFENDANTS**

* * * * * * * * * * * * * * * *

## I.    INTRODUCTION

This matter is before the Court upon the Motion for Summary Judgment from Defendants Campbell County Fiscal Court and James Daley (Doc. # 15).  Plaintiff Wade Sendelbach having filed his Response (Doc. # 18), and Defendants having filed their Reply (Doc. # 19), the Motion is ripe for the Court's review.  For the reasons set forth herein, Defendants' Motion will be **granted**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case stems from a workplace injury that took place at the Campbell County Detention Center ("CCDC") in Newport, Kentucky in October of 2022.  At that time, Defendant Wade Sendelbach worked at CCDC as a Deputy Jailer, a position he had held since 2018.  (Doc. # 14 at 19:17–22:16).  Sendelbach is a resident of Kentucky.  (*Id*. at 10:1–6).  Defendant Campbell County Fiscal Court is a municipal entity that is in charge of the hiring practices of CCDC.  (Doc. # 1-1 ¶ 8).  Defendant James Daley is the Jailer at CDCC.  (*Id*. ¶ 3).

1

In July 2022, Sendelbach injured his foot at home while stretching before work. (Doc. # 14 at 29:1–16). After being examined by doctors, he underwent surgery on his foot on July 29, 2022. (*Id*. at 30:14–31:23). Sendelbach took approximately two weeks off work following his surgery. (*Id*. at 33:13–22). Despite filling out forms for leave under the Family and Medical Leave Act ("FMLA") and being granted that leave, Sendelbach took his two weeks out of his "sick days and vacation." (*Id*.; *see also* Doc. # 15-2). He returned to work at CCDC on August 15, 2022 on "light duty," which entailed tasks like operating doorways and cell doors for other deputies, as opposed to engaging directly with inmates like he normally would. (*Id*. at 33:23–34:13). Sendelbach remained on light duty until September 25, 2022, when he was authorized to return to his duties as a Deputy Jailer. (Doc. # 16 at 43:9–15).

Shortly after returning to his regular Deputy Jailer duties, Sendelbach injured his back while detaining an inmate at CCDC. (Doc. # 14 at 38:23–40:11). Within a week of the injury, he filed a workers' compensation claim. (*Id*. at 42:18–24). Sendelbach's doctors also placed him on restrictions limiting his movements and exertion. (*Id*. at 75:9–20). While receiving treatment, Sendelbach remained at CCDC on the same "light duty" he had worked previously when he injured his foot. (*Id*. at 75:17–24).

Sendelbach remained on light duty until June 28, 2023, when he had surgery on his back. (*Id*. at 45:10–22). He notified his supervisors at CCDC he was having surgery about a week before the procedure took place. (*Id*. at 48:9–17, 49:5–22). Two days before his surgery, Jailer James Daley wrote Sendelbach a letter, advising Sendelbach that he had 324 hours of remaining FMLA leave that would expire on July 24, 2023, and that this remaining time would be used for his upcoming leave. (*See* Doc. # 15-6). The

2

letter outlined CCDC's policies and procedures on FMLA leave, including its policies on leaves of absence for more than three months and procedures on returning to work. (*Id*.). Daley's letter indicated that leaves of absence extending beyond three months would result in termination. (*Id*. at 2).

Approximately two weeks after his surgery, Sendelbach provided CCDC with a medical progress note from his doctor. (*Id*. at 54:14–24). At that time, Sendelbach reported that he told his supervisor he would be able to return to work on August 8, 2023 on his doctor's orders. (*Id*. at 77:17–78:21). CCDC informed Sendelbach that he should fill out FMLA forms but did not give him a timetable for filling out the forms. (*Id*. at 55:12–24). Sendelbach took his forms to his doctors, but they were unable to fill them out. (*Id*. at 55:18–24). He advised his superiors at CCDC that he was unable to get his FMLA forms filled out, and ultimately, he never filled out any FMLA forms for his June surgery and subsequent missed time. (*Id*. at 60:22–61:12).

CCDC terminated Sendelbach through a letter dated July 28, 2023. (Doc. # 15-7). In the letter, Daley alleged that Sendelbach had "exhausted all available sick and vacation leave as well as the unpaid leave of absence granted to [Sendelbach] as an accommodation." (*Id*.). And because Sendelbach had several unexcused absences and CCDC was "unable to continue accommodating [his] absence," CCDC terminated his employment. (*Id*.).

Sendelbach filed this action in Campbell County Circuit Court on November 12, 2024. (*See* Doc. # 1-1). In his Complaint, he asserted three causes of action: FMLA interference and retaliation (Count I); workers' compensation retaliation under Kentucky workers' compensation laws (Count II); and wrongful termination under Kentucky law

3

(Count III).  (*Id.*).    Defendants removed the matter to this Court on November 21, 2024 (Doc. # 1) and filed their Answer on December 5, 2024.  (Doc. # 4).  The parties engaged in discovery for roughly ten months.  At the end of discovery, Defendants filed the instant Motion for Summary Judgment.  (Doc. # 15).  Plaintiff having filed his Response (Doc. # 18), and Defendants having filed their Reply (Doc. # 19), the motion is now ripe for review.

### III.     ANALYSIS

#### A.     Standard of Review

Federal Rule of Civil Procedure 56 allows for the granting of summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party or parties bear the burden of showing an absence of a genuine issue of material fact.  *Sigler v. Am. Honda Motor Co.*, 532 F. 3d 469, 483 (6th Cir. 2008).  A genuine dispute as to a material fact exits where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Id*. at 586. At this stage, the Court must not weigh evidence or make credibility determinations but instead must ascertain whether there is a genuine issue for trial.  *Moran v. Al Basit LLC*, 788 F. 3d 201, 204 (6th Cir. 2015) (quoting *Anderson*, 477 U.S. at 249).  In making this determination, the Court is not required to "search the entire record to establish that it is

4

bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F. 3d 654, 665 (6th Cir. 2001).

### B.      Family and Medical Leave Act

The Family and Medical Leave Act "entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)). Sendelbach's Complaint alleges claims for both interference and retaliation, the two distinct theories of recovery under the FMLA. *See* 29 U.S.C. § 2615(a). Because each claim has different requisite proofs, the Court will conduct separate analyses of each of Plaintiff's claims. *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012) ("Although we have held that a claim for retaliatory discharge is cognizable under either theory, the requisite proofs differ.").

### 1.      Interference

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1). "To prevail on a claim for violation of an employee's prescriptive rights under § 2615(a)(1), the plaintiff need not show that he was treated worse than other employees, just that he was denied an entitlement under the Act." *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004) (internal citations omitted). To survive summary judgment, Sendelbach must show (1) he was an eligible employee; (2) CCDC

5

was a covered employer; (3) he was entitled to take leave; (4) he gave notice of his intent to take leave; and (5) CCDC denied his FMLA benefits or interfered with his FMLA rights. *Groening v. Glen Lake Cmty. Schs.*, 884 F.3d 626, 631 (6th Cir. 2018).   The Sixth Circuit has noted that an employer discouraging an employee from using their FMLA leave is a recognized form of interference.  *Arban v. West Pub. Corp.*, 345 F.3d 390, 402 (6th Cir. 2003) (citing 29 C.F.R. § 825.220(b)).

Defendants contend that Sendelbach's interference claim fails at the fifth requirement.   Specifically, Defendants say Sendelbach's claim fails because "there is nothing on the record to indicate that the Defendants ever denied any request for leave, nor discouraged him from taking it."  (Doc. # 15 at 9).  Indeed, Defendants allege that "Sendelbach's failures – and his failures, alone – [ ] resulted in his termination from CCDC when he did not return to work after the expiration of his leave" because he failed to file the required FMLA forms after his existing leave expired.  (*Id.*).  For his part, Sendelbach maintains that CCDC did not provide him with adequate notice of his rights, responsibilities or potential consequences regarding his FMLA rights.  (Doc. # 18 at 8). He specifically notes that he was never put on notice of the consequences of failing to meet his obligations outlined by CCDC's leave policy, namely when he needed to turn in his FMLA paperwork.  (*Id.*).  Finally, he maintains that he should have been provided with written notice of his rights and responsibilities after he was told to fill out new FMLA paperwork.  All this, Sendelbach maintains, is tantamount to CCDC interfering with his FMLA rights.  (*Id.* at 9).

As an initial matter, the record does not reflect that anyone at CCDC actively discouraged Sendelbach from taking his FMLA leave.  In fact, Sendelbach said himself

6

that he was never discouraged from taking his leave.  (Doc. # 14 at 76:21–77:1).  Instead, Sendelbach makes two arguments outlining how CCDC interfered with his rights.  His first argument is that CCDC interfered by not providing him with adequate written notice regarding his FMLA rights.  (Doc. # 18 at 8).  Sendelbach contends CCDC provided him with "conflicting, confusing, and deficient notices" that did not meet the standard codified at 29 C.F.R. 825.300(b).  (*Id*. at 7–8).  His second argument is that CCDC owed him a second notice after he verbally informed his supervisors he expected to return on August 8, 2023.  (*Id*. at 9).

Beginning with his first argument, the Court finds that Jailer Daley's letter provided Sendelbach with appropriate notice of his rights, responsibilities and consequences of his FMLA leave.  Jailer Daley's letter first provided notice that Sendelbach had 324 hours remaining on his FMLA balance that was set to expire on July 24, 2023.  (Doc. # 15-6 at 1).  The letter then explained that his absence would be applied toward his annual FMLA leave entitlement, which allowed him to take reasonable unpaid leave for serious illness of the employee, among other things.  (*Id*.).  The letter also explained that once FMLA leave is exhausted, Sendelbach would be paid out of his vacation and sick days.  (*Id*.).  Further, once he exhausted his vacation and sick days, his medical leave "becomes an unpaid leave of absence."  (*Id*.).

Read in full, Daley's letter provides a clear message.  Sendelbach's FMLA was to expire on July 24, 2023, at which point his time off would be taken from his vacation time and sick leave.  Once his vacation time and sick leave diminished, his absences became unpaid leaves of absence.  Even viewed in the light most favorable to Sendelbach, he should have been able to recognize that his FMLA leave was limited, and that once it

expired, he would have to take additional measures while he recovered from his surgery. While that letter does contain lots of information, it is not so confusing as to constitute interference by CCDC.

Next, the Court finds that CCDC did not owe Sendelbach a second notice of his rights when he informed his superiors he would not be able to return until August 8, 2023. The reasoning for this is simple—Sendelbach merely provided CCDC with an update on his leave for which CCDC had already given him notice. (*See* Doc. 14 at 52:8–53:16; Doc. # 16 at 63:7–65:24). Read plainly, it is clear that Jailer Daley and CCDC intended for the June 26, 2023 notice to cover Sendelbach's upcoming leave for his back surgery. (*See* Doc. # 15-6 ("Your remaining time will be used for your leave scheduled to begin on June 28, 2023.")).

Moreover, even if the Court were to take Sendelbach's side and find that he was entitled to new notice, it does not change the fact that CCDC told Sendelbach he needed to fill out an additional FMLA form *after* he informed them he would be out longer than his leave covered. (Doc. 14 at 55:12–17; Doc. # 17 at 61:12–63:7). Indeed, Defendant Daley testified that multiple people at CCDC reached out to Sendelbach to get him to fill out the required FMLA paperwork while he recovered from his surgery, but he never did. (Doc. # 17 at 64:14–21, 70:13–71:9). In this scenario, it is difficult for the Court to believe that CCDC interfered with Sendelbach's FMLA rights when they were, as Jailer Daley puts it, "begging him to come in and fill [the FMLA] paperwork out." (*Id*. at 71:1–2). Given that he did not fill out the required paperwork for his surgery, Sendelbach was not entitled to any further FMLA leave than he had already been granted. There were avenues by which he could have received additional FMLA leave and he chose not to take them. Thus, the

8

Court finds that Sendelbach has not put forth any evidence that CCDC interfered with or denied him any of his rights under the FMLA, such as failing to provide him mandated leave. *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 385 (6th Cir. 2017).

Sendelbach also claims Defendants can be held liable for interference under an estoppel theory because Jailer Daley's letter contains "misrepresentations" that he relied on to his detriment. (Doc. # 18 at 9–10). However, Sendelbach misconstrues the standard for granting equitable estoppel. To succeed, Sendelbach must prove that Daley's letter contained a "definite misrepresentation of fact" to him and that he relied on it to his detriment. *See Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984). To be clear, Sendelbach does not claim any of Daley's statements in the letters are definite misrepresentations. He claims that the "letter confirms that Sendelbach's FMLA leave was approved and suggests his employment was secure . . . so long as his leave did not extend beyond three months." (Doc. # 18 at 10). He then claims he relied on these statements to his detriment by not filling out the required health care provider certification form because he did not know the consequences of failing to fill out the form. (*Id*.).

Although creative, this argument fails. Daley's letter gave a firm end date to Sendelbach's FMLA leave, such that he should have known it was set to expire on July 24, 2023. (Doc. # 15-6). Likewise, the letter does not make any sort of affirmative representation that Sendelbach's employment was secure, such that a reasonable person would think they need not take any action. (*Id*.). Accordingly, Sendelbach's FMLA interference claim fails as a matter of law.

9

### 2.   *Retaliation*

The FMLA also prohibits employers from "discharge[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by [the Act]." 29 U.S.C. § 2615(a)(2).  Courts reviewing FMLA retaliation cases are instructed to use the *McDonnell Douglas* burden-shifting framework. *Seeger*, 681 F.3d at 283.  "Under this framework, the employee has the initial burden of establishing his prima facie case; if he does so, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions; finally, the employee has the burden of rebutting the employer's proffered reasons by showing them to be pretextual." *Kirkendall v. Boone Cnty. Bd. of Educ.*, No. CV 22-26-DLB-CJS, 2024 WL 966239, at *4 (E.D. Ky. Mar. 6, 2024) (citing *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014)).  To establish a prima facie case of retaliation, Sendelbach must show (1) that he engaged in an activity protected by the FMLA; (2) the exercise of his right was known to CCDC; (3) CCDC thereafter took an employment action adverse to Sendelbach; and (4) there was a causal connection between the protected activity and the adverse employment action. *Clemons v. Hillshire Brands Co.*, No. 23-5622, 2024 WL 3355379, at *4 (6th Cir. Apr. 11, 2024) (citing *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 616 (6th Cir. 2019)).

Defendants' initial objection is that Sendelbach did not exercise any right to FMLA leave because he did not follow CCDC's internal procedures for receiving FMLA leave. (Doc. # 15 at 11).  They claim that Sendelbach did not "comply with [CCDC's] usual and customary notice and procedural requirements[,]" which in turn means he was not entitled to FMLA leave per CCDC policy.  (*Id.*).

10

The procedures for utilizing FMLA leave are codified at 29 C.F.R. § 825.302. In this case, the relevant provision is § 825.302(d), titled "Complying with employer policy." This regulation provides that an employer may require an employee to comply with its usual and customary notice and procedural requirements for requesting leave. 29 C.F.R. § 825.302(d). Additionally, where an employee does not comply with the employer's usual notice requirements and no usual circumstances justify the failure to comply, an employer may deny or delay FMLA leave. *Id*. Thus, employers may, in their discretion, require employees who require FMLA leave to abide by their procedures. *See Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614–615 (6th Cir. 2013).

That is important because, in this case, there is no evidence CCDC required Sendelbach to follow its notice procedures when requesting FMLA leave. Approximately a week before his June 28 surgery, Sendelbach testified that he told his supervisors, in person, that he was going to have surgery on his back. (Doc. # 14 at 48:9–50:1). Less than a week later, Jailer Daley sent Sendelbach the letter informing him of his 324 remaining FMLA hours that would be used for "[Sendelbach's] leave scheduled to begin on June 28, 2023." (Doc. # 15-6). Taken in the light most favorable to Sendelbach, Daley's letter shows that CCDC allowed Sendelbach to take leave following the in-person notice he gave them a week prior. Although his notice did not comport with CCDC's typical policy and practice, CCDC and Jailer Daley did not seem to take that into account and granted him his leave anyway, as they had a right to do. As such, the Court rejects Defendants' argument that Sendelbach's notice failed to exercise his right to FMLA leave.

Next, Defendants attack the fourth requirement of a retaliation claim, arguing that Sendelbach failed to prove that his taking FMLA leave caused CCDC to terminate his

employment.  (Doc. # 15 at 11–12).  Sendelbach rebuts Defendants' argument by saying that Defendants' actions—mailing him a confusing letter and not telling him he would be fired if he did not fill out the required forms—combined with his termination less than a month after he went on leave creates a genuine issue of material fact "as to whether or not Defendants intentionally misled Sendelbach to encourage complacency so that they would have an excuse to terminate Sendelbach's employment."  (Doc. # 18 at 11).

Sendelbach's theory misses the mark.  Here, the record is replete with evidence that CCDC employees tried to get Sendelbach to fill out the required FMLA forms.  First, Sendelbach admitted that he never received any pushback from CCDC staff when he initially told them he was taking FMLA for his back surgery.  (Doc. # 14 at 44:4–12, 49:17–50:1).  Further, after his surgery, CCDC employes actively encouraged and even begged Sendelbach to fill out his FMLA forms so he could continue his leave.  (*Id.* at 55:12–17; Doc. # 17 at 61:17–62:18, 70:13–71:14).   The record further reflects that Sendelbach failed to submit the new forms, despite having previously filed FMLA forms for leave for his foot injury.  (*See* Docs. # 15-2 and 15-3).  While the Court recognizes that it is often difficult to determine an employer's mindset when making termination decisions, it is clear from its employees' actions here that CCDC did not wish to retaliate against Sendelbach for taking FMLA leave.  Accordingly, Defendants' Motion is **granted** as to Count I of Sendelbach's Complaint.

### C.    Workers' Compensation Retaliation

Kentucky law forbids employers from harassing, coercing, discharging, or discriminating against any employee who filed a lawful workers' compensation claim.  KY. REV. STAT. § 342.197(1).  To succeed on a workers' compensation claim in Kentucky,

Sendelbach must establish that (1) he engaged in a protected activity; (2) CCDC knew he had done so; (3) CCDC took an adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse employment action. *Hackworth v. Guyan Heavy Equipment, Inc.*, 613 F. Supp. 2d 908, 915 (E.D. Ky. 2009).

Once again, Defendants argue that Sendelbach cannot prove the final element. They claim that the nine-month gap between filing his workers' compensation claim in October 2022 and his termination in July 2023 is enough to break any causal connection that may have taken place. (Doc. # 15 at 14). Sendelbach responds that he was actually terminated one month after undergoing back surgery—the medical treatment he sought in conjunction with his workers' compensation claim—which he says "raises an inference that Sendelbach was terminated at least in part because of his decision to undergo a surgery for a work-related injury, that Defendants opposed." (Doc. # 18 at 12–13). As such, he maintains that a trier of fact could find that Defendants intentionally provided him with misinformation about his rights and responsibilities in order to create an opportunity to terminate his employment. (*Id*. at 13). The Court disagrees.

For many of the same reasons listed *supra*, the Court finds that Sendelbach failed to establish a causal relationship between his workers' compensation claim and his termination.[1] Sendelbach's only evidence to prove causation is the timing of his surgery in connection with his termination, and without more, that is not enough to get him over

---

[1]   Because the Court is instructed to draw inferences in the light most favorite to Sendelbach, the Court's analysis focuses on Sendelbach's surgery as the protected activity, as opposed to his filing of the claim. However, the event in question does not change the Court's conclusion. If the Court were to instead analyze Sendelbach's filing his workers' compensation claim as the protected activity, Sendelbach would still not be able to prove the requisite causal connection.

the line.  *See Lambert v. Lowe's Home Ctrs., LLC*, No. 1:14-CV-00107-JHM, 2016 WL 6123239, at *5 (W.D. Ky. Oct. 19, 2016) (concluding that temporal proximity between one-and-a-half and two-and-a-half months alone is not enough to prove causal connection). This, in the face of significant evidence that CCDC was willing to work with him and accommodate him throughout both of his injuries, is sufficient for the Court to reasonably conclude Sendelbach's termination was not retaliatory.  (Doc. # 17 at 25:1–26:4, 39:7–22, 48:9–16).  Accordingly, Defendants' Motion is **granted** as to Count II of Sendelbach's Complaint.

### D.    Wrongful Termination

Under Kentucky law, at-will employees are typically terminable "for good cause, for no cause, or for a cause that some might view as morally indefensible."  *Clarke v. Amazon.com Services LLC*, 699 F. Supp. 3d 596, 600 (E.D. Ky. 2023).  However, the Kentucky Supreme Court has established a narrow public policy exception to the terminable-at-will doctrine.  First, the discharge must be contrary to a fundamental and well-defined public policy as evidence by existing law.  *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985).  Second, the policy must be evidenced by a constitutional or statutory provision.  *Id*.  Finally, the decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.  *Id*.

Kentucky courts have identified three circumstances where an employee's discharge will be contrary to public policy: (1) when there are explicit legislative standards prohibiting the discharge; (2) where the alleged reason for the discharge was the failure or refusal to violate a law in the course of employment and (3) when the reason for a

discharge was the employee's exercise of a right conferred by well-established legislative enactment. *Hill v. Kentucky Lottery Corp.*, 327 S.W.3d 412, 422 (Ky. 2010).

Defendants argue that Sendelbach's Complaint fails to identify what particular public policy Defendants allegedly violated. (Doc. # 15 at 15). Sendelbach did not address Defendants' argument on this point in his Response.

The Court agrees with Defendants that Sendelbach did not allege a violated public policy in his Complaint. Sendelbach did not mention what policy his termination violated or how it violated any public policy, and the Court cannot and will not readily ascertain a violated public policy. *See Johnson v. Goodworks Unlimited, LLC*, No. 5:24-CR-00188-GFVT, 2025 WL 452595, at *2 (E.D. Ky. Feb. 10, 2025) ("However, simply citing a string of KRS statutes in hopes the Court will cobble together a public policy argument where there is none is not a winning strategy. . . . And, ultimately, it is not the job of the Court to flesh out the Plaintiff's arguments for them."). As mentioned *supra*, Sendelbach was terminated for a series of unexcused absences without giving notice to CCDC. As such, CCDC terminated an at-will employee, which it is free to do. Thus, Defendants' motion is **granted** as to Count III of Sendelbach's Complaint.

## IV. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that:

(1) Defendants Campbell County Fiscal Court and James Daley's Motion for Summary Judgment (Doc. # 15) be, and is hereby **GRANTED**;

(2) This matter is **DISMISSED WITH PREJUDICE and STRICKEN** from the Court's active docket; and

(3)     An accompanying **JUDGMENT** in favor of Defendants shall be filed contemporaneously herewith.

This 15th day of April, 2026.



Signed By:

_David L. Bunning_    DB

**Chief United States District Judge**

G:Judge-DLB\DATA\ORDERS\Cov2024\24-200 MOO re MSJ.docx